MT. HAMILL STATE SAVINGS BANK, Appellee, v. ELMER HUGHES et al., Appellants.

**BILLS AND NOTES:**   Holdership in Due Course—Instructions Negativing Each Other.   A correct instruction to the effect that the transferee of a negotiable promissory note cannot recover unless *he* shows that *he* had *no* notice of any fraud in the inception of the note is practically negatived by other instructions to the substantial effect that the transferee *may* recover (1) unless he had actual knowledge of such fraud, or (2) unless he had actual knowledge of such facts as indicated bad faith in buying the note; and that he (the transferee) had a right to assume, in buying the note, that it was free from fraud in its inception.

**TRIAL:**   Verdict-Urging Instructions—Deference to Majority.   Error results from substantially instructing the jury that, in arriving at a verdict, the minority should yield to the judgment of the majority.

PRESTON, C. J., concurs specially.

*Appeal from Jasper District Court.*—D. W. Hamilton, Judge.

November 13, 1923.

Action at law upon a promissory note, the plaintiff being a purchaser thereof for a good consideration before maturity. Various defenses were pleaded, only one of which was submitted to the jury. This was that the note was obtained by false and fraudulent representations. There was a verdict for the plaintiff and judgment thereon. The defendant appeals.—*Reversed.*

*Tobin, Tobin & Tobin* and *Campbell & Campbell,* for appellants.

*Thoma & Thoma* and *Korf & Korf,* for appellee.

Evans, J.—I. The note in suit was for $1,050, and was one of a series of fifty given for the same amount by the same young man for an alleged hog remedy called "Santo," no part

1. Bills and Notes: holder-ship in due course: instructions negativing each other.

of which he ever received. The fraud in the inception of the note was very manifest, and was treated by the court as an established fact. The court, therefore, submitted to the jury but one issue, and that was: Did the plaintiff have notice of the defect in the title at the time of its purchase? The court instructed the jury definitely in Instruction 6, and incidentally in other instructions, that the burden was upon the plaintiff to prove that it did not have notice of the defect. Such instruction was concededly proper. The appellant complains, however, that by other instructions the court ignored this rule of burden of proof, and treated the issue as though the fact of notice must affirmatively be made to appear, and that such instructions were inconsistent with the proper instruction, and tended, therefore, to negative the same. For instance, Instruction 7 was as follows:

"You are instructed that, where one purchases a note before it is due, and for a valuable consideration, and at the time of the purchase of the same it was complete and regular upon its face, then, *before* the purchaser would be chargeable with notice of any infirmity in the instrument, *the purchaser must have had actual knowledge of defect or defects claimed to exist*

in the procurement of said note, or the *purchaser must have had knowledge of such facts* that the purchaser's action in taking the instrument amounted to bad faith upon his or its part.''

It will be noted that the clear effect of the foregoing instruction was to require an affirmative showing of knowledge of the defect ''before the purchaser would be chargeable with notice.''

In Instruction 8, the correct rule is stated in one paragraph. Another paragraph contains the following:

''Therefore they [plaintiff] became holders in due course, unless, at the time the bank purchased said note, the plaintiff bank, through its officers, had knowledge of defects or infirmities in said note.''

Again, in Instruction 12:

''The plaintiff bank had a right to *presume* that it was given for a valuable consideration, and that there were no defects in said note or defenses against the same.''

We are constrained to the view that these quoted provisions were unfortunate in form, and were inconsistent with the rule as correctly stated. If inconsistent therewith, they necessarily tended to negative the same. If no evidence had been introduced on the question of notice, then, under Instruction 7, the plaintiff would not be chargeable with notice. The same implication obtains from the portions quoted from Instructions 8 and 12. What Instruction 7 might have said, in order to be consistent with the rule, was that, if there was fraud in the procurement of the note, then plaintiff *was* chargeable with notice of it, unless it proved to the contrary. And so as to Instruction 12: the plaintiff had a right to presume that there were no defects in the note *only in the event of proof* that it had no notice of defects. A note obtained by fraud carries in its negotiation no presumption in favor of its freedom from defenses, except to a purchaser in due course *who has no notice* of the defects. Proof of such notice is a condition precedent to such presumption. This is only equivalent to saying that there is no presumption at all at this point. The error point is, therefore, well taken.

II.   Other points are argued which are of a character not likely to arise upon a retrial. The most important relates to the

additional instruction given to the jury after it had reported

2. TRIAL: verdict-urging instruc-tions: deference to majority.

its inability to agree. This instruction contained the following clause, to which complaint is especially directed:

"And if any of the jurors differ in their view of the evidence from a larger number of their fellow jurors, such difference of opinion should induce the minority to doubt the correctness of their views."

The complaint is that the foregoing tended to coerce the minority jurors into an acquiescence with the majority. Manifestly, its clear implication was that the majority view was more worthy of consideration than that of the minority. In other words, it was an implied invitation to the acceptance of a majority verdict.

This feature of the instruction has been repeatedly disapproved by us. In *Armstrong v. James & Co.,* 155 Iowa 562, we disapproved it, though we refused to reverse, for want of prejudice under the circumstances shown in that case. In *Clemens v. Chicago, R. I. & P. R. Co.,* 163 Iowa 499, we distinctly disapproved it, and reversed because thereof. In *State v. Mulhollen,* 173 Iowa 242, we again disapproved it, but refused to reverse because of the overwhelming character of evidence in support of the verdict rendered. In *State v. Peirce,* 178 Iowa 417, we again disapproved it, and reversed because thereof. Whether, upon the record before us, we could say that the instruction was nonprejudicial is a question which we have no occasion to consider, in view of the necessity of a reversal on other grounds. What is here said will be sufficiently precautionary to avoid possible error at the same point upon a retrial.

For the reasons pointed out in the preceding division, the judgment entered must be, and is, reversed.—*Reversed.*

PRESTON, C. J., ARTHUR and FAVILLE, JJ., concur.

PRESTON, C. J. (concurring). I concur in the first division. I think it proper to give, in a proper case, an instruction like that referred to in Division II. Perhaps the court should say that a juror should listen to arguments of his associates, instead of using the word "minority."