MIDDLE STATES UTILITIES COMPANY, Appellant, v. INCORPORATED TELEPHONE COMPANY, of Allerton, Appellee.

No. 43338.

JANUARY 19, 1937.

H. K. Evans, H. B. Bracewell, and Hughes, O'Brien & Hughes, for appellant.

D. L. Murrow and T. W. Miles, for appellee.

HAMILTON, J.—This is a dispute over the ownership of a certain telephone line. The plaintiff brought a replevin action to obtain the possession of certain telephone wire, claiming to be the owner thereof and entitled to the possession. This was denied on the part of the defendant, the defendant claiming to be the lessee from another company which it is alleged is the owner of said wire. The facts are quite voluminous and in view of the result reached in passing upon the propriety of giving a certain so-called verdict-urging instruction, it is unnecessary to further relate the facts.

After the jury had deliberated for 22 hours, they came into court announcing that they were unable to agree and stood 7 to 4. The court then gave what has been denominated a "verdict-inducing instruction", and the giving of this instruction is assigned as error. The instruction was in substance almost identical with a similar instruction given in the case of State v. Richardson, 137 Iowa 591, 115 N. W. 220, 222, which was reconsidered in the case of Armstrong v. James & Co., 155 Iowa 562, 136 N. W. 686, 687. In the Richardson case the jury had deliberated from 4:15 o'clock p. m. until the next morning at 9:10 o'clock a. m., at which time the court gave the instruction complained of. In refusing to reverse the case because of the giving of said instruction the court said:

"The aim ever to be kept in view is the truth as it shall appear from the evidence examined in the light of the instructions of the court. Nothing in the language of the instruction given could have been construed otherwise by the jury. The object of giving it was to impress the jurors with the necessity of agreeing upon a verdict, and to lead them to a fair and unbiased examination of the evidence before them. They had been out seventeen hours, and this alone exonerates the court of any charge of having abused his discretion in urging upon them, on his own motion, the necessity of agreeing in a verdict. State v. Hale, 91 Iowa 367, 59 N. W. 281; Allis v. U. S., 155 U. S. 117, 15 S. Ct. 36, 39 L. Ed. 91. A verdict was returned at 11 o'clock in the evening of that day, and this clearly indicates that they were not misled by the instruction. The claim that the jury was kept together an unreasonable length of time is unsound."

In the Armstrong case the jury had been out about 15 hours when the instruction was given. The jury stood 8 to 4. In that

case the court prefaced the giving of the instruction by saying to the jury:

"You will understand that the court has no right to express an opinion at all. If I did, it would be reversible error, and the Supreme Court would reverse the case, because, that is a question for the jury. The court has no right to instruct the jury except in writing. The court has prepared an additional instruction, which I will read to you"

In substance the instruction was the same as that given in the instant case, and His Honor, Judge Deemer, in commenting on the giving of this instruction said:

"The jurors were told, in effect, that no verdict should be returned unless they could conscientiously agree, and we must infer that they followed this admonition. Of course, we should not return to the harsh methods of the common law in inducing verdicts from jurors. They should not be kept without food, water, fire or candle until they agree, nor should they be hauled from one town to another about the circuit subject to contempt and ridicule because they do not agree before the term closes, as was the rule at common law. Indeed, under modern practice, they should not be threatened or coerced into agreeing to a verdict. But it is common knowledge that jurors, like other human beings, become stubborn, forget or overlook the facts of a case, refuse to listen to the arguments of their fellow jurors, or to be governed by the testimony. An opinion hastily formed upon insufficient reflection is sometimes adhered to without other reason than that, having been once expressed, it must be adhered to. Again, jurors sometimes hang upon collateral and inconsequential matters which when fully explained yield to weightier and more direct facts. Stubbornness is often responsible for mistrials, and it is the duty of the presiding judge to secure verdicts, if possible. He is, or should be, something more than a mere moderator. He is the presiding genius of the trial, and if he becomes convinced that jurors are working to no purpose, that they have forgotten their functions, or are failing to give the case proper consideration, it is his duty to set them right, and by proper instructions bring them to a realizing sense of their duties and responsibilities."

He then reviews cases from this state and other states

wherein similar instructions had been approved. In this case the jury themselves after the giving of the instruction complained of asked for additional instruction on the question of duress, which was given. The court in concluding the opinion states:

"As already indicated, the instruction complained of did not of itself hasten the verdict. It did not come until the additional instruction (as to duress) was given, and the record shows that the court was about to discharge the jury when the foreman sent word that, if they were given a little more time, he thought they could agree. After waiting an hour and a half, they did agree and came in with the verdict. The authorities cited sustain each and every remark made by the trial court. We do not overlook the fact that some courts have condemned such an instruction. [Citing cases.] * * * While the instruction goes to the limit it is the general consensus of opinion among courts that, on account of the necessary discretion lodged in the trial court in such matters, no reversal should be predicated upon the giving of such an instruction in the absence of other grounds for reversal. Indeed, it finds support in our own cases which have already been cited, and, while not to be approved as a general proposition, we see no reason for reversing on this ground alone."

There was a vigorous dissenting opinion by Judge Weaver, in which he says:

"The chief trouble with the majority opinion is in the fact that it collects all these inconclusive decisions and marshals them in a manner to invite trial courts to still further incursion into a field which by statute and by the common law from time immemorial has been held to belong to the jury alone."

In the case of State v. Mulhollen, 173 Iowa 242, 248, 155 N. W. 252, 254, a similar instruction was given and the court said:

"The instruction given was substantially the same as that involved in State v. Richardson, 137 Iowa 591, 115 N. W. 220. We have heretofore tolerated this instruction rather than commended it. To some members of the court, it is quite unsatisfactory, as being readily capable of abuse. Upon the facts appearing in Clemens v. Chicago, R. I. & P. R. Co., 163 Iowa 499, 144

N. W. 354, we disapproved of its use in that case. In the case before us, the evidence is so overwhelming and conclusive, as well as undisputed, that it is inconceivable that any candid juror could in good faith find any reasonable doubt of the guilt of the defendants. For that reason, if for no other, we think that the instruction could not have been prejudicial. There is better reason for approving the instruction in the case before us than there was in State v. Richardson, supra.''

In the case of State v. Pierce, 178 Iowa 417, 423, 159 N. W. 1050, 1054, Justice Salinger reviewed all these cases and endeavored to find ''some general rule whereby it may be determined when it is either proper or improper'' to give such an instruction. Here are some of his conclusions:

''On careful analysis of all these cases, there is no decision that such an instruction should never be given, and no more is held than that it depends upon the conditions under which its language is used, whether there is reversible error. * * * We have intimated strongly that such instructions are erroneous if their language (1) indicates an intention to coerce into agreement, or (2) suggests that the jury would be kept together until it agreed. [Citing cases.] The ultimate test would seem to be whether the additional instruction forced or helped to force an agreement, or whether it merely started a new train of real deliberation which ended the disagreement.'' After commenting on the time that the juries had deliberated in the various cases, he says: ''It seems to resolve into whether the relative time spent in deliberation may raise a presumption of prejudice against the instruction. * * * The only practical general rule that may be worked out from all this is that, where the disagreement is of more than ordinary and usual duration, and, after the giving of such an instruction as this, a verdict is reached in a time short in comparison with the duration of the disagreement, a presumption arises that the instruction was prejudicial; that, to use the words of the Clemens case, there should be a reversal where, in such circumstances, 'there is no competent evidence in the record to indicate that the jurors * * * were brought to a final agreement resulting in a verdict, other than through the coercive influence of this instruction, and the long hours of involuntary servitude to which they were subjected, with the tentative suggestion of longer confinement in the event they failed

to agree.' '' He then calls attention to the fact that the jurors in the Pierce case had been kept together by the bailiff some eleven days before they entered upon their deliberations in the jury room. ''After some 48 hours of disagreement, three stood for acquittal when the instruction was given; it was late on Saturday night; and it got into the jury room that the trial judge had gone home and out of town for over Sunday, and that, while there was a judge in town, he could only act to receive a verdict. It fairly had conveyed to it the idea that failure to agree meant confinement over Sunday, at least. We think this raises a presumption of prejudice. Nothing appears to overcome it.'' The court finally concludes in the Pierce case as follows: ''The rule above stated shows on its face how difficult it is to apply it with safety to the rights of the parties. That it is the one which our holdings compel, does not obviate its dangers. Therefore, though its wording is technically correct, and has often been approved, it will be better not to give it unless it be in an extreme case, and we suggest that, when given, it be done in language less likely to have a coercive effect upon the mind of the average juror.''

In the case of Mt. Hamill St. Sav. Bank v. Hughes, 196 Iowa 861, 864, 195 N. W. 589, 590, we find the following comment concerning such instruction:

''This instruction contained the following clause, to which complaint is especially directed: 'And if any of the jurors differ in their view of the evidence from a larger number of their fellow jurors, such difference of opinion should induce the minority to doubt the correctness of their views.' The complaint is that the foregoing tended to coerce the minority jurors into an acquiescence with the majority. Manifestly, its clear implication was that the majority view was more worthy of consideration than that of the minority. In other words, it was an implied invitation to the acceptance of a majority verdict. This feature of the instruction has been repeatedly disapproved by us.'' The court then refers to the cases which we have heretofore noticed and then says: ''Whether, upon the record before us, we could say that the instruction was nonprejudicial is a question which we have no occasion to consider, in view of the necessity of a reversal on other grounds.''

In the case of State v. Flory, 198 Iowa 75, 82, 199 N. W. 303, 306, the court said:

"The court included in its charge to the jury a cautionary instruction, in which the following language was used: 'Every juror should listen to the arguments of other jurors, with a disposition to be convinced by them; and if any of the jurors differ in their view of the evidence from a larger number of their fellow jurors, such differences of opinion should induce the minority to doubt the correctness of their own judgment, and cause them to scrutinize the evidence more closely and re-examine the grounds of their opinion.' A portion of the language quoted above has been repeatedly disapproved by this court. Armstrong v. James & Co., 155 Iowa 562, 136 N. W. 686; Clemens v. Chicago, R. I. & P. R. Co., 163 Iowa 499, 144 N. W. 354; Mt. Hamill State Sav. Bank v. Hughes, 196 Iowa 861, 195 N. W. 589. The Clemens case was reversed on account of an instruction to the same effect. The instruction was disapproved in State v. Mulhollen, 173 Iowa 242, 155 N. W. 252, but we declined to reverse, for the reason that the verdict had the support of the overwhelming weight of the evidence. Whether the judgment in this case should be reversed on account of its instruction alone, we shall not undertake to say. It is sufficient that the instruction has repeatedly had the disapproval of this court."

The ground seems to be fairly well covered and little else need be added to set forth the views of this court concerning the giving of such an instruction. It should be noted that in none of the cases noticed was there a reversal because of the giving of said instruction, except in the Clemens case and the Pierce case, and in each of said cases prejudice was presumed, nothing appearing to the contrary, from the peculiar circumstances of the long period of incarceration of the jury. Nothing of that kind appears in the instant case. As pointed out in the Flory case and one or two other cases above referred to the following language: *"Every juror should listen to the arguments of other jurors, with a disposition to be convinced by them; and if any of the jurors differ in their view of the evidence from a larger number of their fellow jurors, such differences of opinion should induce the minority to doubt correctness of their own judgment, and cause them to scrutinize the evidence more closely and re-examine the grounds of their opinion,"* has been repeat-

edly condemned. This exact language was included in the instruction given in the instant case. The repeated condemnation on the part of this court of the use of this form of expression should prompt the trial court to deter from its further use and the disregard of such expressions of condemnation on the part of this court would in and of itself perhaps be sufficient grounds for reversal. However, it is not necessary to base reversal alone upon this phase of the matter in the instant case.

In the instant case the jury stood 7 to 4 (apparently the case was tried to a jury of 11). After being out 22 hours they came into the court announcing to the court that they were unable to agree upon a verdict. They were then given the instruction complained of and sent back for further deliberation. They remained out seven hours and returned into court with a verdict for the defendant. The plaintiff asked that the jury be polled and the clerk called the name of one of the jurors, whereupon the Court said: "Is that your verdict? Juror: No—I had to. The Court: You don't have to unless that is your verdict. You have returned it here into court. Counsel for plaintiff: We ask that under the law the jury be sent out for further deliberation. The Court: You say it isn't your verdict now? Juror: Yes, I signed it up. The Court: And that is your verdict then as the clerk has read it here? Juror: Yes, sir."

There was further objection on the part of counsel for plaintiff. This whole matter was set up in a motion for a new trial which was overruled. There is nothing in this record indicating what induced or brought about the frame of mind of this particular juror. She was apparently still undecided. Her first utterance indicated that for some reason not disclosed by the record she had agreed to the verdict against her will. This strongly indicates that the giving of the verdict-inducing instruction had an effect not intended by the court in giving the same, namely, to over-persuade or coerce an agreement on the part of this particular juror to the verdict which was returned.

Under such circumstances we are not able to say that the giving of the instruction was not prejudicial in this particular case. There is little we can add to what has already been said in the cases hereinbefore referred to, as a guide to trial courts who may in their discretion, from time to time, deem it advisable to give an instruction of this character. The susceptibility of jurors to the influence of the presiding judge should prompt the court

to emphasize the thought that the court is not endeavoring to inject his own ideas into the minds of the jurors in reference to the verdict which they should find, and should likewise emphasize that in nothing that is said in the instruction does the court intend or mean that any juror should surrender his own free will and judgment. These ideas should be couched in language that would be readily understood by the ordinary lay juror.

Other errors are assigned for reversal which, in view of the result already indicated, it is not necessary for us to consider, and in view of the fact that a new trial will probably be necessary, we refrain from further comment. For the reason already indicated, the motion for new trial should have been granted. The case is accordingly reversed.—Reversed.

RICHARDS, C. J., and ANDERSON, DONEGAN, and KINTZINGER, JJ., concur.