STATE of Iowa, Plaintiff–Appellee,

v.

Benjamin Craig **BROCKMAN**, Defendant–Appellant.

No. 05–1203.

Court of Appeals of Iowa.

Nov. 16, 2006.

Darin Luneckas of Luneckas & Newhouse, P.C., Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, Darrel Mullins, Assistant Attorney General, Harold Denton, County Attorney, and Nicholas Maybanks, Assistant County Attorney, for appellee.

John B. Whiston of the University of Iowa College of Law, Iowa City, for amicus curiae.

Heard by HUITINK, P.J., VOGEL, J., and ROBINSON, Senior Judge.*

HUITINK, P.J.

Benjamin Brockman appeals from his conviction for operating while intoxicated, first offense, in violation of Iowa Code section 321J.2 (2003). We reverse and remand for new trial.

## I. Background Facts and Proceedings

Brockman was the driver in a motorcycle accident that occurred in Cedar Rapids during the early morning hours of September 22, 2004. Brockman and his passenger were both injured when Brockman rode straight through a "T" intersection and crashed into the front of a house. A friend following behind noticed Brockman neither weaved nor slowed as he went past a stop sign obscured by tree leaves before crashing.

Brockman was not wearing a helmet, and for a short time after the accident thought he was in Colorado.[1] He was treated for a fractured collarbone and discharged. He was not treated for a concussion or given a CT scan. He was lucid upon discharge.

Brockman admitted to responding authorities he had been drinking that evening. He smelled of alcohol; his eyes were blurry and bloodshot, and the pupils were dilated. In the opinion of treating doctors and authorities, Brockman was under the influence of alcohol. A blood test at the hospital indicated a blood-alcohol concentration of .115.

The State charged Brockman by trial information with operating while intoxicated, in violation of section 321J.2. Upon Brockman's motion, the trial court suppressed the blood test results, concluding the evidence was insufficient to show valid consent to test. See Iowa Code § 321J.6. The case proceeded to jury trial under section 321J.2(1)(a) (providing that a person is operating while intoxicated if operating a motor vehicle "while under the influence of an alcoholic beverage").

Prior to trial Brockman filed a motion in limine and a motion for a ruling on evidence in advance of trial pursuant to Iowa Rule of Evidence 5.104. Brockman sought to exclude any mention of the blood test or results and to determine the trial court's position on what testimony or evidence at trial might expose him to the re-admissibility of the blood test and results.

The morning of trial the trial court ruled on Brockman's motions as follows:

If the defense puts on any evidence that suggests the defendant was not under the influence of alcohol, that testing is going to come in.... Whether the defendant testifies or not, if you put that issue in, you're going to be walking one of the tightest tightropes I've ever seen. If you're saying he wasn't intoxicated, but rather was impaired at the hospital as a result of a concussion and he wasn't intoxicated prior to the accident, that door is going to be open.... It depends on what you do in cross-examination of the State's witnesses, and it depends on what you do with your own case, whether that test comes in.... If you open the door in your defense in this case that the defendant was not under the influence of alcohol, that test will come in.... It does not hinge on not calling the defendant to testify....[2]

---

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2005).

1. Brockman lived in Colorado and was visiting family and friends in Cedar Rapids.

2. The trial court had been notified that Brockman would not testify.

The State proceeded to present its case to the jury. On the second morning of trial, Brockman filed a "Statement of Argument and Citation of Authority re: Trial Court's Pretrial Rulings on Matters of Evidence" and made an offer of proof. After arguments from the State and Brockman, the court determined Brockman had "opened the door" to the State's use of the blood test results in his cross-examination of Richard Gardner, the friend following behind Brockman at the time of the accident. Accordingly, the court ruled the State could, in its case-in-chief, introduce the results of the blood test "not for the per se inference of intoxication, but to rebut the evidence presented by the defendant that the defendant was not under the influence at the time."

At the close of evidence, the court instructed the jury, "The alcohol concentration established by the analysis of the sample of the defendant's blood can only be used to impeach evidence presented by the defendant that he was not under the influence of alcohol." When asked for clarification from the jury during its deliberations, the trial court provided the following written response:

> The results of the test of defendant's blood may be used as evidence. However, it may only be used to directly contradict evidence introduced by the defendant that he was not under the influence of alcohol. It may not be used for any other purpose.

The jury returned a guilty verdict, and Brockman was sentenced. Brockman appeals, arguing the district court erred in admitting the blood test results into evidence and in its instructions to the jury regarding how the blood test evidence could be used in deciding the case. Brock-

man raises several constitutional issues in relation to his arguments on appeal.

## II. Standard of Review

We review for correction of errors at law. Iowa R.App. P. 6.4. To the extent the issues Brockman raises implicate the violation of constitutional protections afforded criminal defendants, our review is de novo. *State v. Rains*, 574 N.W.2d 904, 912 (Iowa 1998).

## III. Discussion

■ Evidence obtained in violation of the Fourth Amendment is inadmissible at trial under the exclusionary rule. *State v. Jones*, 666 N.W.2d 142, 146 (Iowa 2003) (citation omitted).[3] There are limited exceptions to this general rule: (1) the court may admit the evidence for purposes of impeaching the defendant or (2) when the defendant "opens the door" to the suppressed evidence. *See generally*, 6 Wayne R. LaFave, *Search and Seizure* § 11.6, at 397–413 (4th ed. 2004) (hereinafter LaFave). The exceptions occur "in rather special circumstances in which it is assumed that the deterrence objective of the exclusionary rule would not be served by suppression and where some other important value would be substantially furthered by admission of the evidence." *Id.* § 11.6, at 397.

■ *Impeachment.* The general rule permitting the use of excluded evidence for impeachment purposes provides that "unlawfully obtained evidence ruled inadmissible against a defendant in the prosecution's case in chief may nonetheless be used to impeach *the defendant's assertions* made upon *direct examination.*" *State v. Campbell*, 294 N.W.2d 803, 805 (Iowa 1980)

---

**3.** Iowa's implied consent law constitutes an exception to the warrant requirement of the Fourth Amendment to the United States Con- stitution. *See State v. Palmer*, 554 N.W.2d 859, 861 (Iowa 1996); *State v. Stanford*, 474 N.W.2d 573, 575 (Iowa 1991).

(emphasis added) (holding that "defendant's statements on direct examination opened the door to permissible impeachment by suppressed evidence"); *see generally Walder v. United States*, 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954). The United States Supreme Court has refused to expand the impeachment exception to permit the prosecution to impeach the testimony of *all* defense witnesses. *James v. Illinois*, 493 U.S. 307, 313–14, 110 S.Ct. 648, 652–53, 107 L.Ed.2d 676, 684–85 (1990) (holding that trial court erred by permitting introduction into evidence of defendant's illegally obtained statements as a means of impeaching the credibility of defendant's witnesses' testimony).

■ To the extent the district court relied on *Campbell* in permitting the introduction into evidence of the blood test results, the court clearly erred. The evidence could not be used as impeachment because Brockman never testified. *See, e.g., State v. Crowley*, 309 N.W.2d 523, 524 (Iowa Ct.App.1981) (holding that testimony from police officer and defendant's girlfriend regarding defendant's whereabouts at the time of the crime was not improper impeachment because "it was not impeachment at all. Defendant had not yet testified. The challenged evidence was part of the State's case-in-chief and constituted substantive evidence of guilt."). Moreover, the district court allowed the State to introduce the evidence during its case in chief, in clear contradiction to our supreme court's decision in *Campbell. See Campbell*, 294 N.W.2d at 805.

*"Opening the Door."* "On occasion, defense tactics which ... seek to gain extraordinary advantage from the fact of suppression of certain evidence may ... be deemed to have 'opened the door' to at least limited receipt of that evidence." 6 LaFave § 11.6(b), at 411. Defense tactics

are most likely to be found to have opened the door if they involved a calculated effort to create a high degree of confusion based upon knowledge that any adequate explanation would require some reference to evidence previously suppressed.

6 LaFave § 11.6(b), at 412.

■ As its second witness, the State called Richard Gardner, the friend following behind Brockman at the time of the accident. The State elicited the following testimony:

Q. [D]o you remember paying any specific attention to what the defendant was consuming that night? A. I know he had a beer, that was it.

Q. You didn't keep track of how many beers he drank, or anything? A. No.

The State proceeded to ask Gardner to provide details as to how the accident occurred.

On cross-examination, Brockman's counsel asked Gardner if he had seen Brockman "chugging beers," or staggering and slurring his speech. Gardner responded he had not, and that he would have called a cab if Brockman had seemed intoxicated. It was this cross-examination the district court later determined had "opened the door" to admission of the blood test results during the State's case-in-chief.

We disagree with the district court's ruling that the aforementioned testimony "opened the door" to the admission of the suppressed blood test results. The cross-examination of Gardner was well within the scope of the State's direct examination. The questions asked by the State and by Brockman related to Gardner's general observations of Brockman that night, and went to the issue of whether Brockman was "under the influence," the key element of the crime charged. *See* Iowa Code

§ 321J.2(1)(a). Brockman's cross-examination was not "a calculated effort to create a high degree of confusion" or an attempt to "gain extraordinary advantage" from the suppressed evidence. *See* La-Fave § 11.6(b), at 411–12. The district court erred in determining that Brockman's cross-examination of Gardner "opened the door" to the admission of the previously-suppressed evidence.

The State argues that Brockman "opened the door" to the admission of the blood test results with evidence that suggested he was suffering from a concussion on the night of the accident, rather than being "under the influence." The point at which the district court determined Brockman had "opened the door," however, occurred early on in the State's case-in-chief. We will not speculate as to how the case would have proceeded if the district court had ruled otherwise at that point in the case. Once the court ruled the State could offer the blood test results during its case-in-chief, it was no longer necessary for Brockman to hold back on presenting alternate theories in his defense.

## IV. Conclusion

The district court's pretrial ruling that the suppressed blood test results would be admissible "[i]f the defense puts on any evidence that suggests the defendant was not under the influence of alcohol" severely limited Brockman's ability to present a defense, where the key issue for the jury to resolve was whether Brockman was "under the influence of alcohol." Moreover, the district court committed reversible error when it confused and misapplied two exceptions to the exclusionary rule, thereby allowing the introduction into evidence of the previously-suppressed blood test results. We reverse Brockman's conviction and remand for new trial.

**REVERSED AND REMANDED.**