STATE OF IOWA, Appellee, v. CHARLES SEGO, ET AL., Appellant.

Criminal law: LARCENY OF INTOXICATING LIQUOR: EVIDENCE. Where the state makes out a *prima facie* case the question of the criminal character of defendants conduct is for the jury. Under the evidence in the instant case the question of whether defendants intentionally stole liquor from the prosecuting witness was for the jury, and was sufficient to support conviction for larceny from the person, over the contention of defendants that their acts were done in jest.

Same. Although liquor may have been purchased for an unlawful purpose, that fact will not justify stealing it from the person of the purchaser by force and violence.

Same: NATURE AND EXTENT OF PUNISHMENT. An indeterminate sentence for a term of fifteen years, for the theft of property from the person, valued at eleven dollars, was proper; as all mitigating circumstances may be considered and the sentence so regulated as to meet the ends for which the punishment is inflicted.

*Appeal from Jasper District Court.*—HON. K. E. WILCOCK-
SON, Judge.

THURSDAY, APRIL 10, 1913.

DEFENDANT, with three others, was indicted for the crime
of robbery. Upon trial to a jury, he was convicted of larceny
from the person, and the value of the property taken was
fixed at $11. An indeterminate sentence, not exceeding fifteen
years, was rendered upon the verdict, and defendant appeals.
—*Affirmed.*

*E. J. Salmon* and *E. P. Malmberg,* and *Walter McHenry,*
for appellant.

*George Cosson,* Attorney General, and *John Fletcher,*
Assistant Attorney General, for the State.

DEEMER, J.—The sole and only ground relied upon for a
reversal is that the verdict has not sufficient support in the
testimony; the claim being that defendant's acts were not
criminal, that he was not actuated by a crim-
inal intent, and that what he did was in jest
rather than malicious. If a *prima facie* case
was made out for the state, it was primarily
a question for the jury to determine whether or not defend-
ant's conduct was criminal in character, and with its finding
we should not interfere.

1. CRIMINAL
LAW: larceny
of intoxicating
liquor: evi-
dence.

The testimony for the state tended to show that one
Wehrman, who was doubtless a "bootlegger," went from the
town of Ira, in Jasper county, where he resided, to the city of
Des Moines, where he purchased twenty-two bottles of beer,
eight quarts of whisky, and some candy. These he placed in
two sacks and a grip, which he was carrying, and left Des
Moines for Ira upon a train which departed at about five
p. m. on the evening of June 26, 1911. Arriving at Ira, he

awaited at the depot for a man who was to take him to his
stopping place in the country. While sitting upon his grip,
or suit case, with a sack in each hand, defendant, with his
companions, approached him, and defendant put his foot upon
one of the sacks and said, "What you got here?" to which
Wehrman responded, "That is my property." Defendant
immediately jerked one of the sacks out of his hand and threw
it in the depot window, where one of the codefendants received
it and made away with it. While struggling to get this back,
one of the other defendants took the other sack and went
around the depot with it, joining the defendant who had taken
the first one, and all went to a nearby livery barn. Wehr-
man followed them to the barn and was there assaulted by
defendant, who knocked him down and over into a watering
trough, which was in the barn. Failing to recover his prop-
erty, he started to leave the barn, and, as he was leaving, was
struck by one of his assailants with a buggy whip. Defendant
knew that Wehrman had gone to Des Moines, and a jury was
justified in finding that he and his confederates surmised that
he would bring some liquor back with him. At any rate, they
were conveniently at the depot at or about the time the train
arrived, and managed to get some of his liquors away from
him by force or violence. Wehrman did not know any of his
assailants, other than defendant, and did not appreciate the
joke which was being played upon him, if it was a joke.

Wehrman, it seems, is not very bright and is under
guardianship, and defendant and his companions succeeded
in depriving him of liquors worth $11. We have assumed, for
the purpose of the case, that Wehrman was a
2. SAME.                bootlegger, although the testimony shows, or
tends to show, that he was buying the liquor for his own per-
sonal use. Even if the liquor were purchased for an unlawful
purpose, this would not justify the defendant in taking it
from the prosecuting witness by force or violence; and in
asking us to hold, as a matter of law, that the entire transac-
tion was a joke, notwithstanding an adverse finding by a jury,

too much dependence is placed upon our credulity. Under the facts disclosed, defendant assumes a heavy burden, in trying to make it appear that the entire matter was in jest.

As an indeterminate sentence was imposed, the term of his imprisonment will doubtless be adjusted to meet his case. The chief merit of this system is that the punishment is made to fit the offender rather than the crime and all circumstances in mitigation or excuse may be considered and the sentence so regulated as to meet the ends for which punishment is inflicted. It is erroneous, then, to say that defendant has been sentenced for the term of fifteen years for a minor offense.

3. SAME: nature and extent of punishment.

No error appears, and the judgment must be, and it is, *Affirmed*.

EVANS, J. (specially concurring).—I concur in the result and in the discussion, except as to one remark therein, viz.: "The punishment is made to fit the offender *rather than the crime*." I am willing to say that such punishment is made to fit the offender *as well as the crime*, but I am unwilling to agree to the statement as made in the opinion at this point. In all other respects I concur.