# IN THE COURT OF APPEALS OF IOWA

No. 15-1779
Filed June 7, 2017

**COREY DARNELL MOORE,**
　　　　Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
　　　　Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Todd A. Geer, Judge.

An applicant appeals the denial of his application for postconviction relief.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Mark C. Smith, State Appellate Defender, and Martha J. Lucey, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Bridget A. Chambers, Assistant Attorney General, for appellee State.

Considered by Danilson, C.J., and Doyle and McDonald, JJ.

**MCDONALD, Judge.**

Corey Moore was convicted of robbery in the first degree, in violation of Iowa Code section 711.2 (2011); assault causing serious injury, in violation of Iowa Code section 708.2(4); and possession with intent to deliver marijuana while in the immediate possession of a firearm, in violation of Iowa Code section 124.401(1)(d) and (e). This court affirmed Moore's conviction on direct appeal. *See State v. Moore*, No. 12-2177, 2014 WL 69593, at *1–2 (Iowa Ct. App. Jan. 9, 2014). Moore now appeals the district court's denial of his application for postconviction relief, asserting numerous claims of ineffective assistance of trial counsel, direct-appeal counsel, and postconviction counsel.

I.

The relevant offense conduct was set forth in this court's prior opinion:

In 2010, Belinda Robinson became acquainted with Alonzo Henderson through Facebook. Henderson owned a restaurant in Waterloo and invited Robinson to move into his trailer in Cedar Falls and work in his restaurant. Robinson did so, but Henderson became physically abusive and did not pay Robinson for her work in the restaurant.

Due to their acquaintance, Robinson was aware Henderson was a drug dealer and that he was soon to receive a large quantity of marijuana and some quantity of cocaine. At trial, Robinson testified the plan was to rob Henderson of the drugs and "for [Henderson] to get roughed up and if need be then to use duct tape if they had to, but just basically to rough him up." Robinson included in the plan Jacque Dukes, Crystal Cooper, and Lamario Stokes. Moore is a friend of Dukes and joined in the scheme not long before its commission. Robinson was not aware Moore was intending to participate until the day of the robbery.

On January 26, 2011, the marijuana delivery was made to Henderson's residence. Henderson brought in two men to help with the drugs, William McNealy and Ryan Harper. Shortly after the delivery, Robinson drove Harper's car to buy cigarettes and plastic bags, and later met up with Dukes, Stokes, Cooper, and Moore at a nearby motel. While there, they decided to lure McNealy and Harper away from the trailer by telling them Robinson had run out

of gas in the Hy-Vee parking lot. The group left Harper's car in the Hy-Vee parking lot and drove back to the trailer in Dukes's car. Robinson made the call, then the group watched as Harper and McNealy left the trailer.

Once Harper and McNealy were gone, Moore, Dukes, and Stokes went into Henderson's trailer. Robinson and Cooper waited in the car. All three men were dressed in black and wore covers over their faces. Henderson testified he was in the kitchen when three people dressed in black kicked in the door to his trailer, though he could not discern their race or gender. Two of the intruders were holding guns and pointing them at Henderson. Henderson further testified the marijuana was clearly visible on the kitchen counter.

Henderson then walked into his bedroom. One of the intruders followed him, and after Henderson turned around, hit him in the head with the gun. The two began to wrestle, and a second intruder came into the room and pointed the second gun at Henderson while the first person backed out of the bedroom. The first intruder stumbled, and Henderson attempted to knock the gun out of his hand. The second intruder then opened fire, shooting Henderson once in the arm—after which the bullet penetrated the abdomen—and once in the leg. All three intruders then left the trailer with the drugs. Henderson went into the living room and looked outside but could not see in which direction the intruders went.

Stokes also testified at trial, stating Henderson was on the couch when he, Dukes, and Moore entered through the unlocked front door. Stokes testified he could see the marijuana on the kitchen island and that Moore was the one who shot Henderson. He further testified the entire group left with the marijuana.

Robinson testified that as the group was driving back to Cedar Rapids, she, Dukes, and Cooper were speaking to each other and texting on their phones. Cooper testified Moore told the group Henderson was "talkin' a lot of crap" so Moore shot Henderson in the leg and arm, and Dukes claimed he hit Henderson in the head with his gun. However, during the struggle, Dukes dropped the gun.

The group drove to the apartment of Moore's girlfriend, Bridget Johnson, where they divided up the marijuana. Johnson testified Moore told her he had robbed someone in the Cedar Rapids area and that during the robbery there was a struggle and he shot someone in the leg.

The police were called to Henderson's home the same day. Two spent casings were found at the scene. While the gun that fired the bullets was not recovered, police found a pistol in a bedroom, though it had a bent magazine that would not allow it to

> fire.  Marijuana residue was found throughout the trailer, and there was a trail of marijuana leading out the door.

*Id.*

## II.

## A.

The Sixth Amendment to the United States Constitution provides:  "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense."  U.S. Const. amend. VI.  The Supreme Court has made the Sixth Amendment applicable to the states via incorporation through the Fourteenth Amendment.  "The right to counsel is the right to the effective assistance of counsel."  *State v. Williams*, 207 N.W.2d 98, 104 (Iowa 1973).  The constitutional right to counsel applies to the assistance of trial counsel and appellate counsel; there is no constitutional right to postconviction relief, postconviction counsel, or the effective assistance of postconviction counsel.  *See Williams v. Pennsylvania*, 136 S. Ct. 1899, 1920 (2016) (Thomas, J., dissenting); *Montgomery v. Louisiana*, 136 S. Ct. 718, 746 (2016) (Thomas, J., dissenting) ("Because the Constitution does not require postconviction remedies, it certainly does not require postconviction courts to revisit every potential type of error.").  Although not required by the constitution, the Iowa General Assembly has created a postconviction-relief procedure codified at chapter 822 of the Iowa Code.  The Iowa Supreme Court has recognized a statutory right to counsel in chapter 822 proceedings and a corresponding statutory right to the effective assistance of postconviction counsel.  *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994).

"Generally, postconviction relief proceedings are reviewed for corrections of errors at law." *Waters v. Iowa Dist. Ct.*, 783 N.W.2d 487, 488 (Iowa 2010). However, claims of ineffective assistance of counsel are reviewed de novo. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). This is true whether the claim of ineffective assistance of counsel arises under constitution or statute. *See Killings v. State*, No. 15-1061, 2017 WL 1735614, at *1 (Iowa Ct. App. May 3, 2017) ("Our review of ineffective-assistance claims—whether constitutional or statutory—is de novo.").

To establish a claim of ineffective assistance of counsel, Moore must show "(1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." *Straw*, 709 N.W.2d at 133 (citing *Strickland v. Washington*, 466 U.S. 688, 687–88 (1984)). "The claimant must prove both elements by a preponderance of the evidence." *State v. Madsen*, 813 N.W.2d 714, 724 (Iowa 2012). Failure to prove either element is fatal to the applicant's claim. *See Strickland*, 466 U.S. at 700 ("Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim."); *State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003) ("A defendant's inability to prove either element is fatal."). If the applicant fails to meet his or her burden on either element, the court need not address the other. *See Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015) ("If we conclude a claimant has failed to establish either of these elements, we need not address the remaining element.").

The first element requires proof "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the

Sixth Amendment." *Strickland*, 466 U.S. at 687. "[C]ounsel's performance is measured against the standard of a reasonably competent practitioner." *State v. Begey*, 672 N.W.2d 747, 749 (Iowa 2003). There is a strong presumption of counsel's competence. *See Strickland*, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential.").

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id.* (citation omitted). "Miscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel." *Lando v. State*, 804 N.W.2d 248, 251 (Iowa 2011).

Yet, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. Under the second element, the applicant is required to show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. It is not enough that the applicant show the error had only some effect on the outcome, as nearly any act or omission by counsel results in some change to the outcome one way or another, but not necessarily in a way that would undermine its reliability. *See id.* at 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

B.

Moore argues his counsel was ineffective in failing to challenge the sufficiency of the evidence supporting the robbery conviction. Specifically, Moore contends there was insufficient evidence to support the predicate theft because marijuana is contraband per se and contraband per se is not "property" subject to theft.

We first turn to the elements of the offense.

> A person commits a robbery when, having the intent to commit a theft, the person does any of the following acts to assist or further the commission of the intended theft or the person's escape from the scene thereof with or without the stole property:
> (a) Commits an assault upon another.
> (b) Threatens another with or purposely puts another in fear of immediate serious injury.
> (c) Threatens to commit immediately any forcible felony.

Iowa Code § 711.1(1) (2015). "A person commits theft when the person . . . [t]akes possession or control of the property of another, or property in the possession of another, with the intent to deprive the other thereof." Iowa Code § 714.1. Property is defined as "anything of value, whether publicly or privately owned." Iowa Code § 702.14.

Moore argues contraband per se is not "property" within the meaning of the statute. The supreme court has "recognized that certain property, the possession of which is illegal, is contraband per se, *e.g.*, heroin and other illegally controlled substances, moonshine and sawed-off shotguns." *State v. Ludtke*, 446 N.W.2d 797, 800 (Iowa 1989). The supreme court has also stated

that "[c]ontraband per se may not legally be possessed, and no valid ownership interest may exist in such property." *Id.* These cases are limited to the proposition that Iowa does not recognize a property interest in contraband per se for the purposes of forfeiture law or contract law.

Iowa does recognize a property interest in contraband per se sufficient to support criminal liability for theft. In *State v. Sego*, 140 N.W. 802 (Iowa 1913), the Iowa Supreme Court held stealing contraband liquor would support a conviction for larceny. In *State v. May*, 20 Iowa 305, 308 (1866), the court stated while possessing "liquor as an article of traffic is prohibited, and is liable when kept as such, to be seized and destroyed, nevertheless, until this is done, it is in its essential nature property" and "it is a principle or rule of property, as old as the common law itself, that the possession of one is good against all others, who cannot show a better right of possession." The court held, just as "he who steals a stolen article of property from a thief, may himself be convicted notwithstanding the criminality of the possession by his immediate predecessor in crime," a thief who steals contraband per se can be prosecuted for larceny or robbery because "[l]arceny is a crime against society, and should be punished on account of its own inherent meanness and criminality." *May*, 20 Iowa at 308–09 (stating larceny is a "distinct crime" from possession of contraband and "both, to be sure, are violations of law, but each has its own specific and appropriate penalty, and each must be dealt with by itself").

"Today the rule is universal that by prohibiting possession of an item, the government does not license criminals to take it by force or stealth from other criminals." *People v. Dillon*, 668 P.2d 697, 704 n.5 (Cal. 1983). The policy

reasons supporting the rule are numerous and obvious. *See id.*; *see also Commonwealth v. Rourke*, 64 Mass. 397, 402 (Mass. 1852) ("Each violation of law is to be dealt with by itself. The felonious taking has its appropriate and specific punishment, so also has the unlawful acquisition."); *People v. Otis*, 139 N.E. 562, 562 (N.Y. 1923) (stating the contrary result would "license theft" and "encourage the transportation, distribution, and consumption of [the contraband] by the thief").

Counsel is not required to make an argument contrary to settled and universal law. *See Graves*, 668 N.W.2d at 881 ("Trial counsel has no duty to raise an issue that has no merit."); *State v. Davis*, No. 14-1976, 2016 WL 1677591, at *5 (Iowa Ct. App. Apr. 27, 2016) ("Nor does counsel have a duty to raise and relitigate issues already decided."). Moore's counsel did not breach an essential duty in failing to argue this point. The district court did not err in denying this ground for relief.

## C.

Moore next challenges his robbery conviction. By way of background, the State had several theories of liability with respect to the robbery charge. The marshaling instruction for robbery in the first degree allowed the jury to find Moore guilty as the principal or as an aider and abettor. The district court also instructed the jury on joint criminal conduct with burglary serving as the underlying crime. The joint-criminal-conduct instruction provided:

> When two or more persons act together and knowingly commit a crime, each is responsible for the other's acts done in furtherance of the commission of the crime or escape from the scene. The defendant's guilt is the same as the other person's unless the acts

could not reasonably be expected to be done in furtherance of the commission of the crime.

The State must prove all of the following elements for Robbery under the theory of joint criminal conduct.

1. The defendant acted together with at least one other person.

2. The defendant and the other person or persons knowingly participated in the crime of Burglary, as defined in Instruction No. 35.

3. While furthering the crime of Burglary, the other person or persons committed the different crime of Robbery or a lesser included charge of Robbery as defined in Instruction No. 28.

4. The defendant could have reasonably expected that the different crime of Robbery would be committed in furtherance of the crime of Burglary.

If you find the State has proved all of these elements, the defendant is guilty of the crime of Robbery.

The jury acquitted Moore of burglary charge, but the jury convicted Moore of first-degree robbery. The jury returned a general verdict.

Moore contends his counsel was ineffective in failing to move for judgment of acquittal on the ground there was insufficient evidence to prove joint criminal conduct and was ineffective in failing to object to the joint-criminal-conduct instruction on the ground there was insufficient evidence to submit the instruction. Specifically, Moore contends there was insufficient evidence of burglary because Robinson lived in the home and gave consent to entry. He further argues because the jury returned a general verdict, the court cannot know whether the jury improperly convicted him for robbery under the joint-criminal-conduct instruction. *See State v. Martens*, 569 N.W.2d 482, 485 (Iowa 1997) (stating when there is a general verdict of guilty, "we have no way of determining which theory the jury accepted").

The cases on which Moore relies were resolved on direct appeal where error was preserved. Where, as here, the claim is asserted within the context of

a claim of ineffective assistance of counsel, the defendant must still establish *Strickland* prejudice. *See State v. Thorndike*, 860 N.W.2d 316, 321–22 (Iowa 2015) ("Thus, given the nature of Thorndike's claim, he must affirmatively demonstrate counsel's alleged deficiency undermines our confidence in the verdict and therefore resulted in prejudice entitling him to a new trial, regardless of whether his claim would require reversal if it were before us on direct appeal."); *State v. Maxwell*, 743 N.W.2d 185, 197 (Iowa 2008) ("Further, when there is no suggestion the instruction contradicts another instruction or misstates the law there cannot be a showing of prejudice for purposes of an ineffective-assistance-of-counsel claim."); *State v. Tejeda*, 677 N.W.2d 744, 754–55 (Iowa 2004) ("It is true that we have said that 'an instruction submitting an issue unsubstantiated by evidence is generally prejudicial.' Unlike the case at bar, however, [these previous cases] were decided on direct appeal, and not in the ineffective-assistance-of-counsel context." (citations omitted)).

Moore failed to establish prejudice. The district court's instruction was a correct statement of the law. *See State v. Smith*, 739 N.W.2d 289, 294–95 (Iowa 2007) (setting forth the elements of the offense). The instruction did not contradict the first-degree robbery instruction. *See* Iowa Code §§ 703.1, 703.2, 711.2; *see also Thorndike*, 860 N.W.2d at 322. Additionally, there was overwhelming evidence to support Moore's robbery conviction:

> Stokes was present when Moore shot Henderson; Cooper testified Moore admitted to shooting Henderson in the leg and arm; Stokes testified "[Dukes] came out walkin' briskly, stood to the side and that's when [Moore] shot." Furthermore, Johnson testified Moore and his co-conspirators came to her apartment with a large quantity of marijuana. Sometime later she heard him admit to having robbed and shot someone. There were also cell phone records

and video surveillance corroborating the testimony of Moore's co-conspirators. Additionally, a gun was found at the scene of the crime, which coincides with Cooper's testimony she heard Dukes say he dropped the gun during the commission of the offense after a struggle, and Henderson was hit in the head with what he believed was a gun. While not the gun used to fire on Henderson, it does provide proof a gun was used in connection with the robbery.

*Moore*, 2014 WL 69593, at *4. This finding is binding on this court. *See State v. Grosvenor*, 402 N.W.2d 402, 405 (Iowa 1987) (holding "the legal principles announced and the views expressed by a reviewing court in an opinion, right or wrong, are binding throughout further progress of the case upon the litigants, the trial court and this court in later appeals"). The fact there was no prejudice is further reinforced by the verdicts. The jury acquitted Moore of burglary but nonetheless found him guilty of robbery. There is thus no opportunity for the defendant to have been found guilty based on anything other than his own conduct. *See State v. Jackson*, 587 N.W.2d 764, 766 (Iowa 1998). Moore's conviction therefore did not "result[] from a breakdown in the adversary process that renders the result unreliable" and the court's "confidence in the jury's verdict is not undermined." *Thorndike*, 860 N.W.2d at 323. The district court correctly denied Moore's claim for relief.

### D.

Moore next challenges the accomplice instruction. The instruction read:

An "accomplice" is a person who knowingly and voluntarily cooperates or aids in the commission of a crime.
A person cannot be convicted only on the testimony of an accomplice. The testimony of an accomplice must be corroborated by other evidence tending to connect the defendant with the crime.
You are instructed that the Court has found that Lamario Stokes, Belinda Robinson, and Crystal Cooper were accomplices and you must consider each of them as an accomplice. The

defendant cannot be convicted only by that testimony. There must be other evidence tending to connect the defendant with the commission of the crime. Such evidence, if any, is not enough if it just shows a crime was committed. It must be evidence tending to single out the defendant as one of the persons who committed it.

Corroborative evidence need not be strong and need not be entirely inconsistent with innocence. The requirement of corroborative evidence is met if it can fairly be said the accomplice is corroborated in some material fact tending to connect the defendant with the commission of the crime.

Corroborative evidence need not confirm every material fact testified to by the accomplice, nor need it confirm all the elements of the crime charged. Corroborative evidence can be either direct or circumstantial. There may be a combination of circumstances, singularly unpersuasive but in their totality sufficient, to corroborate an accomplice's testimony.

A small amount of corroborative evidence is all that is required.

Moore argues his counsel should have challenged this instruction because it failed to inform the jury he could not be convicted only on accomplice testimony and the accomplice testimony must be corroborated by other evidence.

As is apparent from the text of the instruction, the claim fails. The instruction given already informs the jurors the accomplices' testimony "must be corroborated by other evidence tending to connect the defendant to the crime" and that Moore could not "be convicted only by [accomplice] testimony."

Although his argument is not exactly clear, Moore appears to argue there was insufficient evidence corroborating the accomplices' testimony that specifically linked Moore to the crime. We conclude this claim is without merit. On direct appeal, Moore's appellate counsel argued trial counsel was ineffective for failing to challenge this instruction on the ground it failed to name Johnson as an accomplice. This court held "there was a great deal of corroborating evidence

to support the testimony of Moore's co-conspirators." *Moore*, 2014 WL 69593, at *6.

> These include various cell phone records and video surveillance showing Robinson at Hy-Vee, which corroborates her testimony the group left a car in the Hy-Vee parking lot. There were also sales records from Wal-Mart where a small digital scale was purchased, as well as the presence of a gun and marijuana residue in Henderson's residence. Furthermore, there was the testimony of the victim, Henderson, as to what occurred, including the gunshot wounds he suffered and the gash on his head from being struck with a gun, as well as the timing of the 911 call Henderson placed shortly before the group arrived at Johnson's residence with the marijuana. This is all sufficient evidence supporting the co-conspirator's testimony.

*Id.* Our prior conclusion there was ample corroborating testimony is the law of the case and is "binding throughout further progress of the case upon the litigants, the trial court and this court in later appeals." *Grosvenor*, 402 N.W.2d at 405. This doctrine applies even in postconviction-relief matters. *See State v. Ragland*, 812 N.W.2d 654, 658 (Iowa 2012) (holding the law of the case doctrine barred the applicant's challenge to his conviction in postconviction-relief proceeding). Furthermore, there was testimony from a non-accomplice that Moore admitted to robbing someone in Cedar Rapids and shooting the victim in the leg.

Moore's trial counsel did not breach an essential duty in failing to challenge the instruction. *See State v. Fountain*, 786 N.W.2d 260, 263 (Iowa 2010) ("Counsel has no duty to raise an issue that has no merit.").

E.

Moore also challenges the jury instruction regarding the charge of possession of a controlled substance with intent to deliver while in immediate possession of a firearm. It states:

> The State must prove all of the following elements of Possession of a Controlled Substance with Intent to Deliver while in the immediate possession of a firearm:
> 1. On or about the 27th day of January, 2011, either the defendant or the persons the defendant aided and abetted knowingly or intentionally possessed marijuana, a controlled substance.
> 2. The defendant knew that the substance possessed by either the defendant or the person the defendant aided and abetted was marijuana.
> 3. Either the defendant or the person the defendant aided and abetted possessed the substance with the intent to deliver a controlled substance.
> 4. The defendant and/or the person the defendant aided and abetted possessed the marijuana while in the immediate possession of a firearm.
> If the State has proved all of the elements, the defendant is guilty of Possession of a Controlled Substance with Intent to Deliver. If the State has proved elements 1 and 2, but has failed to prove element 3, the defendant is guilty of Possession of a Controlled Substance. If the State has failed to prove either element 1 or 2, the defendant is not guilty.

Moore argues his counsel was ineffective for failing to challenge the instruction on the ground the instruction did not include the lesser included offense of possession with intent to deliver. The State concedes the instruction was incorrect. *See State v. Jeffries*, 430 N.W.2d 728, 737 (Iowa 1988). The question presented is whether Moore is entitled to relief.

We conclude Moore suffered no constitutional prejudice as a result of the failure to instruct on the lesser included offense and is thus not entitled to relief. "[T]he failure to instruct a jury on a proffered lesser included offense does not

automatically require reversal." *State v. Miller*, 841 N.W.2d 583, 596 (Iowa 2014). The failure to instruct may not be prejudicial where the defendant did not rely on the non-included offense as a theory of their case. *See id.*; *State v. Negrete*, 486 N.W.2d 297, 299 (Iowa 1992); *see also State v. Smith*, 282 N.W.2d 138, 141 (Iowa 1979) ("This court has a long history of not reversing on the ground of technical defects in procedure unless it appears in some way they have prejudiced the complaining party or deprived him or her of full opportunity to make defense to the charge presented in the indictment or information."). Moore sought acquittal on all charges. It was never the theory of his case that he was guilty of possession with the intent to deliver and not the greater offense of possession of marijuana with intent to distribute while in possession of a firearm.

In addition, there was overwhelming evidence Moore "and/or the person [Moore] aided and abetted possessed the marijuana while in the immediate possession of a firearm." His co-conspirators testified to the large quantities of marijuana stolen from Henderson and there was a trail of marijuana and debris around Henderson's residence. *See Moore*, 2014 WL 69593, at *5. There was undisputed evidence of a presence of two guns at the time of the robbery. *See id.* at *4. One gun was found at the scene and was likely Dukes's, who, Cooper testified, said he had dropped his gun during the robbery. *See id.* The second gun was reasonably likely to be in the presence of the conspirators when dividing the contraband. In addition, Johnson testified Moore told her he had robbed someone in the Cedar Rapids area and that during the robbery there was a struggle and he shot someone in the leg. "[P]rejudice may not exist where the evidence of guilt is so strong there is no reasonable probability the result would

have been different if the instruction in question had been correctly stated." *State v. Milder*, No. 14-0076, 2015 WL 3613338, at *12 (Iowa Ct. App. June 10, 2015). Such is the case here.

F.

Moore contends his counsel was ineffective for failing to challenge the testimony of Officer Mike Briggs on the grounds Briggs improperly vouched for and bolstered the credibility of other witnesses. At trial, the State asked Briggs about his first interview with Robinson:

> Q. Did you have an occasion then to speak with Miss Robinson in this first interview? Was she willing to speak with you? A. Yes.
> Q. And to a certain extent was she forthcoming in her involvement? A. To a certain extent, yes.
> Q. At that point in time she hadn't told you everything? A. That's correct.

Briggs testified Cooper was forthcoming about her involvement when speaking with the police. Briggs also testified he went to several potentially relevant locations during the course of his investigation to corroborate the statements of certain witnesses and attempt to obtain relevant evidence. For example, Robinson told Briggs the group went to Wal-Mart on the night at issue to purchase a digital scale. Briggs testified he went to the store to investigate whether the store had video and records of the transaction. The prosecutor asked Briggs what he hoped to achieve in going to these locations. He testified:

> A. When someone tells me something, I want to corroborate what they're saying. I'm not just going to take somebody's word for it, I want to follow-up on what they say and try to prove that they're telling me the truth or they're telling me a lie.
> Q. Were you able to do that with [Robinson]? A. Yes.
> Q. And with [Cooper]? A. Yes.

On cross examination, Moore's counsel asked Briggs about handwritten statements he made for Robinson and Cooper regarding a photo lineup:

Q. Did you get the opportunity to review the two statements that you wrote for Miss Robinson and Miss Cooper before today? A. About the photo lineups?

Q. Yeah. A. Yes.

Q. Okay. I mean would it be fair to say those are almost verbatim, word-for-word identical statements that you wrote out, at least the first half of them? A. I don't recall. Probably so.

Q. Okay. I mean—It's not—it's not normal that witnesses will give you the exact same written statements when they write out a statement; is it? A. *If it's the truth.*

Q. Even when witnesses are trying to tell the truth, though, they will have different perceptions of what occurred; won't they? A. Yes.

(Emphasis added.)

We conclude counsel had no duty to object to the testimony. The officer testified as a fact witness based on his personal observations made during the course of his investigation and as a fact witness offering lay opinion based upon personal knowledge. *See* Iowa R. Evid. 5.602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); Iowa R. Evid. 5.701 ("If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue."). "An officer's testimony regarding observed demeanor as a historical fact and lay opinion regarding the observed demeanor is relevant and admissible in Iowa." *State v. Ritenour*, No. 15-0038, 2016 WL 3269551, at *12 (Iowa Ct. App. June 15, 2016) (collecting cases). "Similarly, an officer can testify a person gave a

statement or statements as a matter of historical fact and provide lay opinion on whether the statements were consistent or inconsistent or credible or not credible." *Id.* at *13. An officer can also testify regarding statements made and actions taken during the course of an investigation to explain the course of investigation. *See id.* Counsel had no duty to pursue a meritless issue. Finally, even if defense counsel should have objected in regard to the emphasized testimony above the defendant was not prejudiced. The testimony was brief, and the officer qualified his answer by subsequently agreeing witnesses will have different perceptions.

## G.

Moore raises an evidentiary challenge. He contends his counsel was ineffective in failing to object to hearsay testimony. Cooper testified as follows:

> Q. As you're on your way back to Cedar Rapids, was there some discussion by Corey Moore as to what had happened in the trailer? A. Yes.
> Q. And what did he say happened? A. That [Henderson] was talkin' a lot of crap and that he shot him in the leg and the arm.
> Q. What about [Dukes], what happened with [Dukes]? A. [Dukes] said, also, that he was talking—[Henderson] was talking a lot of crap and he hit him with his gun.
> Q. [Dukes] say anything about where the gun was at? A. He said that he dropped it and tried to retrieve it and could not.

Moore argues Cooper's statements regarding Dukes's out-of-court statements were hearsay. The State contends the statements were coconspirator statements and thus statements by a party opponent.

A statement by a party opponent is not hearsay. *See* Iowa R. Evid. 5.801(d)(2). The rule encompasses statements "made by the party's coconspirator during and in furtherance of the conspiracy." Iowa R. Evid.

5.801(d)(2)(E); *accord. State v. Kidd,* 239 N.W.2d 860, 864 (Iowa 1976). "Once a conspiracy had been shown, the burden is upon the conspirator to show it has ended." *Kidd,* 239 N.W.2d at 864. As to whether a statement was made in furtherance of the conspiracy, Iowa courts have held:

> Acts or declarations of a coconspirator, to be admissible, must be in furtherance of the conspiracy; that is, in some measure or some extent, it must aid or assist toward the consummation of the object of the conspiracy. Furtherance . . . has a well-defined and generally accepted meaning, which is the "act of furthering or helping forward, or promotion, or advancement." A mere relation of something already done for the accomplishment of that object is not competent evidence against others, but hearsay only. . . . [D]eclarations which are either acts in themselves purporting to advance the objects of the criminal enterprise, or which accompany and explain such acts, are to be distinguished from statements, whether written or oral, which, though made pending the plot, are mere narratives of acts or measures which have already been done or taken. A co-conspirator, in recounting past transactions or events having no connection with what is being done in promotion of the common design, cannot be assumed to represent those associated with him. Only such acts and declarations as are done and made in accomplishing the object intended can be said to have been authorized by the body of the conspirators as a whole.

*State v. Gilmore,* 132 N.W. 53, 55–56 (Iowa 1911). "Narrative declarations of past occurrences can be in furtherance of a conspiracy." *Kidd,* 239 N.W.2d at 865 (citations omitted). "A narrative declaration is in furtherance of the conspiracy if it has some connection with what is being done in promotion of the common design." *Id.* This rule is construed broadly. *See id.*

We conclude counsel did not breach a duty owed Moore. Dukes was a coconspirator. His statements were made during the life of the conspiracy, as "[a] conspiracy to commit robbery does not necessarily end when the robbery has been committed; it may persist at least until the fruits of the crime have been divided." *Id.* at 864. Post-robbery statements by coconspirators have been held

in furtherance of the conspiracy. *See id.* at 865. The statement was made in the car ride to Cedar Rapids immediately following the crime and prior to the conspirators dividing up the stolen contraband. The statement at issue was a report from the conspirators who actively participated in the robbery to the conspirators who did not actively participate in the robbery. *See id.* The communication was in furtherance of the conspiracy because it provided additional information to the other conspirators. The statement also alerted the other conspirators to potential problems regarding the offense. Specifically, Dukes left his gun at the scene of the crime. Under the circumstances, we conclude the statements were made during and in furtherance of the conspiracy.

## H.

Moore claims the trial court erred in providing the jury with a supplemental verdict-urging instruction after the jury foreperson informed the district court the jury had come to a consensus on two of the charges but was deadlocked on the other two. Moore raised this issue on his direct appeal, but the record was not adequately developed to consider the issue. *See Moore*, 2014 WL 69593, at *5. He raised it again in his application for postconviction relief as an ineffective-assistance-of-counsel claim for his trial counsel's failure to object to the instruction and for his appellate counsel's failure to preserve error for appellate review. The district court heard testimony on this issue during the postconviction hearing, but no record of the trial court's instruction to the jury or the conversation the court had with the jury had been made or submitted to the district court during the postconviction relief hearing. The district court determined Moore's counsel

was not ineffective, but noted it did so based on the testimony and not a formal record of the proceeding.

After polling the jury to determine how many jurors believed "more deliberations would be beneficial"—eleven "yes," one "no"—the court instructed the jury:

> Now, what—Under the law at this time what I'm going to instruct you to do is that you have a verdict on two counts. That's okay. But I'm going to send you back and ask you to deliberate some more on the other two counts. If you're unable to reach a verdict on those two counts, let us know and we'll have another— and we'll deal with it then. But I think we have to do—As you're aware, the parties have put in a lot of time and effort in this matter and we'd like to see a little more opportunity to try and reach a verdict. If you can't, you can't, on the last two counts. But we just need to know—I just need to know that you try it one more and we'll see where we're at. All righty?

The jury returned to deliberations at 9:54 a.m. and deliberated until approximately 12:30 p.m. the same day (approximately two-and-one-half hours) before returning with a verdict.

Moore first requests this court to declare verdict-urging instructions improper and per se reversible error. Verdict-urging instructions, however, have "long been sanctioned." *State v. Piper*, 663 N.W.2d 894, 911 (Iowa 2003) (citation omitted), *overruled on other grounds by State v. Hanes*, 790 N.W.2d 545 (Iowa 2010). Iowa courts have never held these instructions to be per se erroneous. *See State v. Campbell*, 294 N.W.2d 803, 809 (Iowa 1980). We decline the invitation or hold a verdict-urging instruction improper per se. We are not at liberty to overrule controlling supreme court precedent. *See State v. Beck*, 854 N.W.2d 56, 64 (Iowa Ct. App. 2014).

Moore also argues the verdict-urging instruction was improper. "The ultimate test [of whether a verdict-urging instruction is proper] is whether the instruction improperly coerced or helped coerce a verdict or merely initiated a new train of real deliberation which terminated the disagreement." *Campbell*, 294 N.W.2d at 808. "[T]he trial judge has considerable discretion in determining whether the verdict-urging instructions should be given and that each case is to be decided on its own circumstances." *Id.* at 808–09. The content of the instruction "is only one factor to consider in determining whether the jury was improperly coerced" and the instruction must be evaluated "in its context and under all circumstances." *Piper*, 663 N.W.2d at 911–12 (internal quotation marks and citation omitted). Factors that may evidence whether the jury's verdict was coerced include: "an inquiry into the jury's numerical division, a speedy verdict after receiving the supplemental instruction, and language instructing the jury it must make a decision." *Id.* at 912. The district court should also avoid discussing the cost of litigation or that a decision must be reached by "some jury." *Campbell*, 294 N.W.2d at 809–10.

The trial court's instruction was not prejudicially coercive. The jury poll properly asked whether the jurors believed additional deliberations would be beneficial rather than a poll on the verdicts. The United States Supreme Court has authorized this form of polling by the court:

> Here the inquiry as to the numerical division of the jury was not as to how they stood on the merits of the verdict, but how they stood on the question of whether further deliberations might assist them in returning a verdict. There is no reason why those who may have been in the minority on the merits would necessarily conclude that further deliberation would not be helpful, or that those in the majority would necessarily conclude otherwise. The two questions

> are clearly independent of one another. We believe the type of question asked by the trial court in this case is exactly what the Court in *Brasfield* implicitly approved when it stated: "[An inquiry as to numerical division] serves no useful purpose that cannot be attained by questions not requiring the jury to reveal the nature or extent of its division."

*Lowenfield v. Phelps*, 484 U.S. 231, 240 (1988) (quoting *Brasfield v. United States*, 272 U.S. 448, 450 (1926)). The court's polling of the jury did not evidence coercion. Nor did the court's statement about how much time and effort the parties put into the case. *See State v. Power*, No. 13-0052, 2014 WL 2600214, at *4–5 (Iowa Ct. App. June 11, 2014) (approving an *Allen* charge where the instruction included the language "[t]he case has been *exhaustively and carefully tried* by both sides" (emphasis added)). The court did not require the jury to reach a conclusion; nor did it say that a jury had to reach one. *See Campbell*, 294 N.W.2d at 810–11. The time it took the jury to conduct further deliberations before coming to a verdict does not evidence coercion, in fact, it falls within the period of time Iowa courts have said evidence "further worthwhile consideration." *State v. Kelley*, 161 N.W.2d 123, 126 (Iowa 1968); *accord. Campbell*, 294 N.W.2d at 811 (discussing periods of time that have evidenced lack of coercion, including as little as forty-one minutes).

Moore's trial counsel had no duty to object to a proper instruction and no prejudice resulted from his failure to do so. His trial counsel testified at the postconviction-relief hearing he also did not seek a mistrial because he believed the jury foreperson was favorable to Moore and her reluctance to reach an agreement on the charges could result in a hung jury. We will not second-guess this strategic decision. *See Lando*, 804 N.W.2d at 251 ("Miscalculated trial

strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel.").

*I.*

Moore next argues his postconviction counsel was ineffective for failing to provide deposition records of Robinson, Stokes, and Johnson, which would have been used to show his trial counsel was ineffective for failing to impeach those witnesses with their deposition testimony. Moore's postconviction counsel had raised the issue of ineffective assistance of counsel for failing to impeach the witnesses, and had listed the depositions as evidence in the application, but failed to provide the deposition records to the court. The postconviction court, based on the trial transcripts, held Moore failed to demonstrate his trial counsel breached an essential duty or that he was prejudiced. Moore contends the only way to demonstrate whether trial counsel was ineffective for failing to impeach the witnesses was to submit the depositions as evidence to demonstrate his trial counsel could have impeached the witnesses with inconsistent statements. Moore argues this was structural error on the part of his postconviction counsel because Moore had no assistance of counsel at the proceedings. In the alternative, Moore argues his postconviction counsel's omission should be preserved for further postconviction-relief proceedings because there is not an adequate record to reach the merits.

We reject Moore's contention that this claimed error constitutes structural error. Moore was not completely deprived of counsel on the issue. His postconviction counsel questioned his trial counsel on the issue of impeachment, including his general practices on reviewing and preparing for impeachment,

impeaching witnesses, and how he communicates the impeachment to the jury. Based on the testimony, there was no issue with trial counsel's examination of these witnesses.

We reject Moore's request to preserve this claim for further postconviction-relief proceedings. Although our case law has preserved claims of ineffective assistance of postconviction counsel where the record is inadequate to decide the claim on the merits, there does not appear to be any statute authorizing preservation of such a claim for subsequent postconviction-relief proceedings. Iowa Code section 814.7(3) authorizes the preservation of ineffective-assistance-of-counsel claims only on direct appeal from a "criminal proceeding." Iowa Code § 814.7(3) ("If an ineffective assistance of counsel claim is raised on direct appeal from the criminal proceedings, the court may decide the record is adequate to decide the claim or may choose to preserve the claim for determination under chapter 822."). "[P]ostconviction relief proceedings are not criminal proceedings, but rather are civil in nature and are triable at law to the court." *Jones v. State*, 479 N.W.2d 265, 269 (Iowa 1991) (emphasis in original omitted). Because a postconviction-relief proceeding is a civil proceeding rather than a "criminal proceeding," section 814.7(3) is inapplicable here. We thus have no authority to "preserve" a claim of ineffective assistance of postconviction counsel. Moore may file another application for postconviction relief and assert this or any other claim. The timeliness and propriety of any such application, claim, or claims would be governed by chapter 822.

The postconviction applicant bears the burden of establishing his claim by a preponderance of the evidence. *See Nguyen v. State*, 878 N.W.2d 744, 752

(Iowa 2016). On the record before this court, the defendant failed to prove his postconviction counsel breached an essential duty or constitutional prejudice resulted. We thus deny this claim for relief.

J.

Moore contends the cumulative effect of the above-discussed claims resulted in constitutional prejudice. *See State v. Clay*, 824 N.W.2d 488, 501 (Iowa 2012) ("Iowa recognizes the cumulative effect of ineffective assistance of counsel claims when analyzing prejudice under *Strickland*."). Where, as here, an applicant asserts multiple claims of ineffective assistance of counsel, "the cumulative prejudice from those individual claims should be properly assessed under the prejudice prong of *Strickland*. The court should look at the cumulative effect of the prejudice arising from al the claims." *Id.* Where the applicant raised multiple claims of ineffective assistance and the court found the attorney did not fail to perform an essential duty, that claim is dismissed. *See id.* If the court only considered the prejudice prong, "the court can only dismiss the postconviction claim if the alleged errors, cumulatively, do not amount to *Strickland* prejudice." *Id.* at 501–02. Here, as to any claim Moore raises in which we did not address the duty prong, we do not believe the cumulative effect of Moore's attorneys' actions or inactions rises to the level of *Strickland* prejudice.

III.

Moore contends his sentence requiring him to pay the entirety of the attorney fees of his appointed counsel is illegal because it exceeded statutory guidelines and because the district court failed to make a reasonable determination if Moore could pay. Illegal sentences may be challenged at any

time, notwithstanding that the illegality was not raised in the trial court or on appeal. *See* Iowa R. Crim. P. 2.24(5)(a) ("The court may correct an illegal sentence at any time.").

We reject Moore's claim that the amount of the fee was illegal and in excess the authorized limit. Iowa Code section 815.14 provides the "expense of the public defender may exceed the fee limitations established in section 13B.4." Here, the public defendant sought and obtained authorization to exceed the fee limitation.

"A defendant's reasonable ability to pay is a constitutional prerequisite for a criminal restitution order such as that provided by Iowa Code chapter 910." *State v. Von Hoff*, 415 N.W.2d 647, 648 (Iowa 1987); *see also State v. Kurtz*, 878 N.W.2d 469, 472–73 (Iowa Ct. App. 2016) ("[B]efore ordering payment for court-appointed attorney fees and court costs, the court must consider the defendant's ability to pay."). The defendant has the burden to demonstrate the district court's failure to exercise discretion or abuse of that discretion. *See Von Hoff*, 415 N.W.2d at 648. "A determination of reasonableness, especially in a case of long-term incarceration, is more appropriately based on the inmate's ability to pay the current installments than his ability to ultimately pay the total amount due." *Id.* at 649.

At the sentencing hearing, the district court asked Moore whether he would be able to pay the attorney fees:

> The Court: Okay. So, Mr. Moore, how much of Mr. Lanigan's attorney fees do you believe you can pay based on a plan of payment when you get out on parole?

The Defendant:  None.  I'll be 60 some years old when I get out on parole.  Twenty-five plus another ten, I'm 40—I'm 39, I'll be 40 next January.

The Court: Okay.  Well, given the nature of the crime, the severity of the crimes, I'm going to order that you do pay the whole hundred percent of the attorney fees when you get out on parole.  They'll set out a plan of payment and you can work on paying that back when you get out.

The State concedes the district court erred in failing to determine whether Moore would reasonably be able to make the payments and what the payments of his restitution plan should be.  We therefore vacate that portion of Moore's sentence and remand this matter to the district court to make a determination of Moore's reasonable ability to pay.

IV.

For the foregoing reasons, we affirm-in-part the judgment of the district court.  We vacate the attorney fee provision of Moore's sentence and remand this matter to the district to make a determination of Moore's reasonable ability to pay.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**